UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BAHRAM H.,

                      Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

CASE NO. 3:18-cv-05152-BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING WITH PREJUDICE**

Plaintiff appeals the ALJ's decision finding him not disabled. The ALJ found Plaintiff's degenerative disc disease, personality disorder, depression and lumber strain are severe impairments; Plaintiff has the residual functional capacity (RFC) to perform light work, with additional restrictions; Plaintiff cannot perform past work as a field service engineer/electronics technician, but based upon the testimony of Vocational Expert (VE) Erin Hunt, can perform other work in the national economy. Tr. 20, 22-23, 33-34.

Plaintiff contends the ALJ erred by: (1) improperly assessing Plaintiff's symptom testimony, including a finding of malingering; (2) misevaluating the opinions of Ferdinand Proano, M.D., Robert K. Burlingame, M.D., Todd D. Bowerly, Ph.D., William Platt, M.D. and Robyn Oster, a vocational consultant; and (3), based on these errors, improperly assessed Plaintiff's RFC, and erred at step five. Plaintiff requests remand for an award of benefits. Dkt.

10 at 1. The Commissioner argues the ALJ's decision is supported by substantial evidence and should be affirmed. Dkt. 11 at 2.

For the reasons below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** this case with prejudice.

**DISCUSSION**

The Court will reverse the ALJ's decision only if it is not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The Court will not reverse the ALJ's decision on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**A.     Assessment of Plaintiff's Symptom Testimony**

The ALJ rejected Plaintiff's testimony of the extent of his pain from a 2005 lumbar strain and his related psychological symptoms, based upon a diagnosis of malingering by psychological examiner Jack Davies, Psy.D., and because the testimony was not supported by the overall medical record. Tr. 24, 28.

If a claimant produces objective medical evidence of impairments and shows the impairments could reasonably be expected to produce some degree of the alleged symptoms, an ALJ may reject the claimant's symptom testimony only upon (1) finding affirmative evidence suggesting malingering, or (2) providing specific, clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040–41 (9th Cir. 2003). In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ "examine[s] the entire case record, including

the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling (SSR) 16-3p.[1]

The Court finds the ALJ did not harmfully err in discounting Plaintiff's symptom testimony.

### 1.     *Evidence of Malingering*

Dr. Davies conducted an independent medical examination (IME) of Plaintiff in January, 2011, and found Plaintiff engaged in "virtually constant dramatic pain behavior," and "severe symptom magnification." Tr. 708. Dr. Davies found Plaintiff's results on each objective test administered during the exam were "extremely low" and in conflict with Plaintiff's objective abilities, "invalid," and "far too low to be considered real." Tr. 712-13. For example, one test yielded results that, if accurate, "would indicate that Mr. Hosseini is either demented or mentally retarded, which he is not." Tr. 712.[2] Similarly, IQ testing yielded a score of 61—an extremely low level wholly incompatible with Plaintiff's demonstrated abilities and educational achievements. *Id.* Finally, Plaintiff's MMPI-2 results were "invalid," yielding results "most often seen in forensic settings, when individuals are either attempting to escape prosecution by contrived mental disorder, or when disability is litigated over physical symptoms which are

---

[1] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. However, the Court continues to cite to relevant case law utilizing the term credibility.

[2] Indeed, as the ALJ noted, Plaintiff has an associate's degree in electronics, and vocational testing showed he had a 12th grade reading ability, 11th grade arithmetic ability, and strengths focused in numerical and mechanical reasoning. Tr. 26, 631.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING WITH
PREJUDICE - 3

either malingered or seriously magnified." Tr. 713. Dr. Davies concluded "no other explanation is reasonable" for these results except for "malingering, that is conscious symptom magnification in pursuit of secondary gain." *Id*.

The ALJ also found the overall medical record conflicted with Plaintiff's symptom testimony. Tr. 24. Treatment notes from one of Plaintiff's treating physicians, as well as reports from several different examining physicians report subjective symptoms inconsistent with objective findings, as well as exaggeration and pain behavior. Darrell Miller, M.D., who treated Plaintiff between 2007 and 2009, noted staff observed Plaintiff walking with a normal gait and using his back with no apparent pain or limitation, in contrast with "histrionic" behavior during examination, including "marked guarding" of his back in all directions and a "shuffling gait." Tr. 438, 426, 411. Dr. Miller repeatedly noted "pain behavior" and "disability conviction," and repeatedly reported a lack of objective findings to support Plaintiff's reported symptoms, including an absence of atrophy. Tr. 401, 407, 409, 410, 412, 418, 424, 426, 436. In addition, Plaintiff violated his pain contract. Tr. 401-02. Dr. Miller concluded Plaintiff should "force [him]self to exercise," and recommended unannounced drug screens and surveillance by the Department of Labor and Industries (L&I) to "see if [patient is] malingering." Tr. 400, 426. In a December, 2008 report to L&I, Dr. Miller again recommended monitoring of Plaintiff's activity outside the clinic, because Plaintiff had occasionally been "observed to move quite well"— which "never happens when he knows he's observed." Tr. 511.

Examining physicians also noted pain behavior, including magnification of symptoms when Plaintiff was aware he was being observed. Orthopedic surgeon Robert C. Winegar, M.D., examined plaintiff in April, 2008 and reviewed Plaintiff's records. He concluded there were "no hard neurological findings" supporting Plaintiff's symptoms; instead, "there are multiple positive

Waddell's findings and inconsistent findings suggesting the presence of pain behavior and especially disability conviction." Tr. 565. He recommended a work hardening program and, eventually, a return to Plaintiff's past work. *Id.* Similarly, orthopedic surgeon George Sims, M.D. concluded after a July, 2009 IME that Plaintiff "never had symptoms which were compatible with his MRI findings" and that "every examiner noted no neurologic deficit, including myself." Tr. 687. Dr. Sims found Plaintiff "resisted" one physical test, but "performed it admirably" when he finally agreed to it, that Plaintiff's flexion was "voluntarily limited" and Plaintiff, after standing comfortably in the waiting room, came into the exam room leaning to the left and walking very slowly—but departed without leaning to either side, while limping on the right leg, "basically a different gait." Tr. 688. Dr. Sims concluded Plaintiff "tends to magnify his symptoms" and "demonstrated pain behavior." *Id.* Neurologist William Platt, M.D., examined Plaintiff in January, 2011; Dr. Platt also observed Plaintiff's gait was "much more antalgic" inside the examination room than while walking in the hall afterward, and that Plaintiff gave "very poor effort" during physical testing. Tr. 700.

Plaintiff argues the ALJ erred in finding malingering, contending malingering was not "clearly established in the record" because two other doctors, treating psychologist Todd D. Bowerly, Ph.D. and examining psychiatrist Robert Burlingame, M.D., did not agree with Dr. Davies' finding of malingering.[3] Dkt. 10 at 3.

Plaintiff's argument fails. First, the Ninth Circuit has rejected the proposition that there must be a specific finding of malingering; rather, it is sufficient that there be affirmative evidence suggesting malingering. *See Carmickle*, 533 F.3d at 1160 n.1. As discussed above, the

---

[3] The ALJ's evaluation of the opinions of Drs. Bowerly and Burlingame are discussed in more detail in sections B(3) and (4) below.

record contains such evidence from several different medical sources.  Second, Plaintiff's argument amounts to a contention the ALJ should have balanced the medical evidence differently.  The ALJ is responsible for resolving conflicts in the medical record, *Carmickle*, 533 F.3d at 1164, and that resolution must be upheld where, as here, the evidence provides reasonable support and is rationally interpreted.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999).  It cannot be said that the ALJ erred in finding that the record contained evidence of malingering.

Evidence of malingering is sufficient to support an ALJ's determination to discount a claimant's testimony. *Mohammad v.* Colvin, 595 Fed. Appx. 696 (9th Cir. 2014) (unpublished) citing *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040–41 (9th Cir. 2003) (noting that evidence of malingering would support the rejection of a claimant's testimony, but noting no such evidence in that case).

### 2. *Clear and Convincing Reasons*

In addition, the ALJ provided other clear and convincing reasons for discounting Plaintiff's symptom testimony.  Plaintiff does not contest the findings of pain behavior and symptom magnification by the treating and examining doctors discussed above; instead, Plaintiff contends he was weaned off his opiate medications in 2009, implicitly asserting the sole purpose for the behavior was to obtain opiates. Dkt. 10 at 15-16.  However, as discussed above, the record contains substantial evidence Plaintiff magnified and exaggerated his symptoms and failed to give full effort in both psychometric and physical testing throughout the alleged period of disability (which began in 2005), including findings from doctors post-dating Plaintiff's weaning from opiates.  In particular, such behavior was found during both psychological and physical IMEs in 2009 and 2011—none of which would have resulted in an opiate prescription.

Tr. 677-89, 700, 712-13. Symptom exaggeration and sub-maximal effort in testing—whatever their purpose— are clear and convincing reasons to disregard Plaintiff's symptom testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (adverse credibility determination based on, among other things, poor effort on testing and a tendency to exaggerate, was supported by substantial evidence); *Thomas*, 278 F.3d at 959 (claimant's "efforts to impede accurate testing of her limitations supports the ALJ's determinations as to her lack of credibility.").

Plaintiff further contends the ALJ improperly applied the "objective evidence test" by requiring objective proof of his symptoms. Dkt. 10 at 14, 16. The record does not support this contention. The ALJ found the extreme limitations claimed by Plaintiff were inconsistent with clinical findings, including a lack of neurological deficits and muscle atrophy. Tr. 24. In addition, the ALJ observed Plaintiff's most recent primary care records at Peace Health Fishers Landing, where he received care from 2015-2016, contain no complaints of back pain. Tr. 26, citing Tr. 720-808. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p. An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle*, 533 F.3d at 1161; *Tonapetyan*, 242 F.3d at 1148.

The ALJ cited substantial evidence and did not legally err in discounting Plaintiff's symptom testimony based on the inconsistency between his testimony and the record.[4]

---

[4] Plaintiff also contests a finding by the ALJ that Plaintiff had engaged in "fraud or similar fault," under 42 U.S.C. §405(u), which therefore compelled the disregard of his symptom testimony. Tr. 28. The Court need not reach this issue because, as discussed above, the ALJ also found evidence of malingering and stated clear and convincing reasons for disregarding

**B.     Evaluation of Medical Evidence**

Plaintiff challenges the ALJ's evaluation of the opinions of Ferdinand Proano, M.D., Robert K. Burlingame, M.D., Todd D. Bowerly, Ph.D., William Platt, M.D. and Robyn Oster.

As a threshold matter, Plaintiff contests the ALJ's disregard of medical findings based upon Plaintiff's subjective complaints, which resulted from the ALJ's finding of "fraud or similar fault" under 42 U.S.C. §405(u). Specifically, the ALJ disregarded evidence of lower Plaintiff's back pain, radicular pain, antalgic gait and lower extremity weakness, post-operative pain, receipt of only transient relief from epidural steroid injections and interpretation of Plaintiff's invalid MMPI scores as a plea for help. Tr. 28. Plaintiff disputes the finding of fraud or similar fault, but also argues the ALJ's finding does not justify the rejection of medical opinions "at least to the extent that they [are] based . . . on objective clinical findings." Dkt. 10 at 4.

The Court need not determine whether the ALJ's finding of fraud or other fault was erroneous, because—as discussed above—the ALJ also properly discounted Plaintiff's symptom testimony on other grounds. "An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008) (internal quotation marks omitted). Furthermore, the ALJ did not reject the contested medical opinions solely on this ground. As is discussed in more detail below with respect to each of the challenged medical opinions, the ALJ also articulated specific and legitimate reasons, based upon substantial evidence, for his rejection of those opinions.

---

Plaintiff's testimony. Thus, if there were any error in the finding of fraud or similar fault, it would be harmless. *Carmickle,* 533 F.3d at 1162-63.

### 1. Dr. Proano

Dr. Proano treated Plaintiff from 2009 to 2013 in connection with plaintiff's L&I claim. Dr. Proano's notes from 2009-2011 contain findings that Plaintiff's back condition was stable and had reached maximum medical improvement, and Plaintiff was capable of returning to full-time sedentary work (although noting that any psychological issues were beyond his expertise). Tr. 495, 493, 492, 490, 485, 481, 480, 478, 477, 476. However, in January, 2012, following receipt of a Physical Capacity Report from physical therapist James Franck (Tr. 655)[5], Dr. Proano found the report "demonstrated a maximum capacity of Sedentary-Light work category on a part-time basis" and opined Plaintiff would therefore not be capable of full time work. Tr. 654. Dr. Proano repeated this opinion in December, 2012. Tr. 473. In November, 2013, Dr. Proano noted Plaintiff's musculoskeletal conditions had reached maximum medical improvement and one of Plaintiff's psychological IMEs had been "unfavorable," and recommended Plaintiff seek another psychological IME "if he wishes to address the psychiatric issues in . . . his [L&I] claim." Tr. 472. Finally, in August, 2014, Dr. Proano opined Plaintiff was not capable of full-time work or retraining activities "on the basis of his psychiatric condition." Tr. 528.

The ALJ gave Dr. Proano's opinions little weight, because they were not consistent with the overall medical evidence, including: (1) the absence of neurological deficits noted by Drs. Miller and Winegar; (2) positive Waddell signs found by Dr. Winegar; (3) Dr. Milller's finding of inconsistency between Plaintiff's subjective complaints and objective findings; (4) Dr.

---

[5] Plaintiff summarizes Mr. Franck's opinions, but does not provide any argument that the ALJ erred in evaluating them. Dkt. 10 at 6-7. Any such argument is therefore waived. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (declining to address assertions unaccompanied by legal arguments: "We require contentions to be accompanied by reasons.")

Miller's assessment of malingering and symptom magnification; (5) Plaintiff's violation of his pain contract; (6) the opinions of Dr. Sims and another examining physician that Plaintiff's disc condition would not have caused his symptoms; and (6) the opinion of Dr. Winegar that Plaintiff could return to his prior work. Tr. 29, citing Tr. 401, 565, 410-412, 418, 426, 401, 516-17, 677-689, 556-66.

Plaintiff argues the conflicting medical evidence relied upon by the ALJ pre-dates Dr. Proano's more recent opinions. But Plaintiff fails to note Dr. Proano consistently found Plaintiff's condition to be stable and to have reached maximum medical improvement throughout his period of treatment, and the record contains no evidence that Plaintiff's back condition worsened over time. Indeed, Plaintiff's most recent medical treatment notes, from 2015 to 2016, show that he sought treatment for different conditions (such as gout, knee pain and rashes) rather than his back condition; back pain is neither mentioned nor found. *See*, *e.g.* Tr. 759 (Plaintiff's chief complaint is knee pain; examination is "negative for back pain"). Furthermore, while Dr. Proano's final opinion notes Plaintiff's back condition imposes "permanent limitations," he finds Plaintiff unable to work "on the basis of his psychological condition." Tr. 528. Plaintiff provides no reasons why the passage of time should negate the substantial evidence upon which the ALJ relied. The ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Proano's opinions. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988) (contradicted opinion of a treating physician may be rejected if ALJ provides specific and legitimate reasons).

**2.    Dr. Bowerly**

Dr. Bowerly provided psychological treatment to Plaintiff between November, 2009 and December, 2010; he also provided responses in May and June, 2011 to Dr. Davies' finding of

malingering, and performed a final psychological examination of Plaintiff in October, 2011. Dr. Bowerly's response to Dr. Davies' IME report agreed the test results "represent a magnification of true/legitimate symptoms" but construed the magnification not as malingering but instead as a "plea for help." Tr. 468. Dr. Bowerly's report of his October, 2011 examination of Plaintiff opined Plaintiff's self-report of his symptoms "is held somewhat in question based on the IME results," and consequently reported his diagnosis "did change somewhat based on the IME results." Tr. 469. Dr. Bowerly opined there "may or may not" be a pain disorder, and diagnosed only an unspecified depressive disorder. *Id*. Unlike Dr. Davies, he did not find evidence of a personality disorder. *Id.* Dr. Bowerly opined Plaintiff would benefit from a return to work, finding him "likely capable of sedentary employment." Tr. 470.

The ALJ rejected Dr. Bowerly's critique of Dr. Davie's malingering diagnosis, adopting the reasons set forth in a rebuttal by Dr. Davies. Tr. 27, citing Tr. 513-14. In particular, the ALJ and Dr. Davies rejected Dr. Bowerly's view Plaintiff's symptom magnification was a cry for help because that theory (which Dr. Davies described as "largely outdated") applies to individuals who are not receiving psychological care, and Plaintiff had received treatment. Tr. 27, 514. The ALJ accepted Dr. Davies' opinion Plaintiff's pain behavior was "histrionic and over the top" and was as extreme as Dr. Davies had seen in his career, and agreed with his conclusion that Plaintiff had engaged in conscious manipulation to avoid rehabilitation. *Id.*[6]

Plaintiff challenges only the ALJ's failure to adopt Dr. Bowerly's opinion that Plaintiff was not malingering. Dkt. 10 at 12. Plaintiff provides no authority or argument to support his

---

[6] The ALJ also rejected Dr. Bowerly's opinion that Plaintiff could likely perform only sedentary work, on the ground that Dr. Bowerly's expertise did not encompass assessing an exertional level in connection with Plaintiff's back impairment. Tr. 31. Plaintiff does not challenge this determination, and Dr. Bowerly himself stated that he would "defer to another examiner" regarding an impairment rating. Tr. 470.

contention; he appears merely to assert the ALJ should have adopted Dr. Bowerly's interpretation of Plaintiff's symptom magnification over Dr. Davies' interpretation. But it is the ALJ's responsibility to assess the medical evidence and to resolve any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle* 533 F.3d at 1164. The ALJ provided specific and legitimate reasons for her resolution of the conflicting interpretations of Plaintiff's acknowledged symptom magnification by Drs. Bowerly and Davies.

### 3. Dr. Burlingame

Dr. Burlingame conducted an IME of Plaintiff in November, 2011. He administered the MMPI-II RF, which yielded an invalid and "exaggerated" result. Tr. 521. But unlike Dr. Davies, Dr. Burlingame concluded the exaggeration and invalid results pointed not to malingering, but to severe depression with psychotic features, aberrant thinking, paranoia and pain disorder. Tr. 521. Dr. Burlingame diagnosed posttraumatic stress disorder arising out of Plaintiff's youthful history in an Iran/Iraq war refugee camp, pain disorder, major depression with psychotic features and polysubstance abuse history; he also diagnosed a personality disorder not otherwise specified. Tr. 522. Dr. Burlingame opined Plaintiff became progressively more mentally ill after his 2005 industrial accident, with depression and "escalating delusions and psychotic features," and, unlike the other psychological examiners in the record, found a "severe mental illness that would preclude all work." Tr. 524.

The ALJ gave Dr. Burlingame's assessment little weight, finding it was inconsistent with Plaintiff's reports of making progress in therapy, objective testing showing strong academic abilities, malingering and extreme pain behaviors diagnosed by Dr. Davies, and an absence of

psychiatric hospitalizations or, until recently, any psychological treatment outside of Plaintiff's L&I claim. Tr. 31.

Plaintiff argues, as he did with respect to Dr. Proano, the ALJ improperly disregarded Dr. Burlingame's opinion based upon evidence that pre-dated the opinion. Dkt. 10 at 9. Plaintiff's argument is unavailing. Dr. Burlingame's diagnosis is itself based upon events pre-dating his examination—including delving deep into Plaintiff's youth—and is not premised upon any intervening or new events that occurred after Dr. Davies' and Dr. Bowerly's examinations earlier in the same year. Furthermore, Dr. Burlingame's diagnoses of extreme psychological disability, psychosis and delusions conflict with each of the other psychological evaluations in the record—both before and after Dr. Burlingame's assessment. None diagnosed PTSD, and none found psychotic elements or delusions. *See* Tr. 469 (Dr. Bowerly's 2011 diagnosis of depressive disorder NOS); Tr. 713-14 (Dr. Davies' diagnosis of malingering and personality disorder NOS); Tr. 813 (August, 2016 diagnosis of major depressive disorder, rule out secondary gain by treating provider Community Services Northwest). There is no merit to Plaintiff's argument Dr. Burlingame's opinion should prevail over each of these simply because of its timing.

As stated above, the ALJ is responsible for resolving conflicts in the medical record, *Carmickle*, 533 F.3d at 1164, and that resolution must be upheld where the evidence provides reasonable support and is rationally interpreted, *Tackett*, 180 F.3d at 1098, and *Morgan*, 169 F.3d at 599. The ALJ did not err in rejecting Dr. Burlingame's opinion.

**4.     Dr. Platt**

Dr. Platt, an M.D. and neurologist, conducted an IME of Plaintiff in January, 2011. Dr. Platt observed "there was much grunting, groaning, and guarding" during the examination, and Plaintiff's gait was "much more [antalgic] in the examination room th[a]n when I observed him

walking in the hall." Tr. 700. He also found an adequate sitting straight leg raise could not be done due to Plaintiff's leaning; palpation yielded tight lumbar paraspinals but "probably no true spasm"; neurologic testing and motor strength were 5/5; and Plaintiff showed "very poor effort" during a partial sit up test. *Id.* Dr. Pratt found "no objective evidence of localized muscle weakness, atrophy . . . and no[ ] objective localized muscle weakness in the right lower extremity." Tr. 703. There was likewise no reflex loss. *Id.* Imaging showed "mild but significant" change at L5-S1. *Id.* Dr. Pratt opined Plaintiff could not perform his prior job, but would be capable of performing a sedentary electronics assembler job with modifications, including the ability to alternate sitting and standing and minimal bending, twisting and turning. Tr. 702.

The ALJ gave Dr. Pratt's opinion some weight, but disagreed with the requirements (such as sedentary work and the need for a sit/stand option) that were more restrictive than her RFC finding. Tr. 30. The ALJ found Dr. Platt did not adequately consider Plaintiff's absence of neurological deficits, positive Waddell signs in prior examinations, evidence of symptom magnification and notations in the medical record that Plaintiff's subjective complaints were inconsistent with objective findings. Tr. 30.

Plaintiff contests the ALJ's treatment of Dr. Pratt's opinion, but merely summarizes his report and quotes the ALJ's findings. Dkt. 10 at 13. Plaintiff makes a bare assertion the ALJ's reasons "are not legitimate," but provides no argument beyond the truism that Dr. Pratt's opinion was based upon an examination and chart review.[7] *Id.* Inconsistency with the medical record is a legitimate reason to discount a medical opinion. *Tommasetti*, 533 F.3d at 1041. Moreover,

---

[7] This is, of course, also true of the other IME reports in the record that conflict with Dr. Pratt's conclusions, including those of Drs. Winegar and Sims. Tr. 556-566; 677-689.

1 Plaintiff's failure to support his assertion with legal argument or discussion is inadequate to

2 preserve the issue for appeal. *Indep. Towers*, 350 F.3d at 929 ("we require contentions to be

3 accompanied by reasons"). The ALJ did not err in her evaluation of Dr. Pratt's opinions.

### 5. Robyn Oster

Robyn Oster, a vocational consultant, reviewed Plaintiff's L&I claim file and issued a report in February, 2012, concluding Plaintiff was permanently restricted from returning to work in any capacity based on a combination of his industrial injury and his psychological conditions. Tr. 642. Ms. Oster did not perform any examination of Plaintiff; her report relies solely upon the examination by Mr. Franck and the opinions of Drs. Proano and Burlingame. Tr. 641-42. She does not discuss any of the additional evidence in the record that conflicts with those opinions. *Id*.

The ALJ gave Ms. Oster's opinion little weight, because it did not comport with the overall medical evidence record, including Plaintiff's lack of neurological deficits, the inconsistency between his subjective complaints and objective findings, the evidence of malingering and symptom magnification, notations of Plaintiff's progress in therapy, testing revealing good academic abilities, and the absence of psychiatric hospitalizations or inpatient treatment. Tr. 32.

Plaintiff argues the ALJ erred in relying upon older medical evidence while failing to acknowledge that Ms. Oster's opinion was consistent with the "more recent" opinions of Drs. Proano, Burlingame and Pratt. Dkt. 10 at 13. The ALJ did not err. As a non-acceptable medical source, the opinions of Ms. Oster may be given less weight, and may be discounted for "germane" reasons. *Gomez v. Chater*, 74. F.3d 967, 970-71 (9th Cir. 1996); *Molina,* 674 F.3d at 111. As the ALJ found, Ms. Oster's opinions conflict with the evidence in the record, including

the opinions of acceptable medical sources.[8] Tr. 32. This is a germane reason for discounting her opinions. *Molina*, 674 F.3d at 1111.

## D. Step Four and Five Findings

Plaintiff asserts the RFC and step five findings were erroneous because they failed to include all of the limitations described by Drs. Proano, Burlingame, Bowerly, and Platt, Ms. Oster and Plaintiff. Dkt. 10 at 18-19. The assertion fails because as discussed above the ALJ did not commit reversible error in evaluating that evidence, and accordingly did not err at steps four or five. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 27th day of December, 2018.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

---

[8] As discussed above, there is no merit to Plaintiff's argument regarding the timing of the various opinions; there is no evidence that Plaintiff's condition has changed and, moreover, at least one of the opinions (from Dr. Davies) is contemporaneous with the opinions upon which Plaintiff relies.